UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 13-60299-CIV-MARRA

TIMOTHY ARNOLD,

    Plaintiff,
vs.

WAUSAU UNDERWRITERS
INSURANCE COMPANY,

    Defendant.
_____/

## OPINION AND ORDER

This cause comes before the Court upon the parties' cross-motions for summary judgment (DE 35, 38), and Defendant's Motion for Leave to Amend Its Answer to Plaintiff's Amended Complaint (DE 20). These Motions are ripe for review. The Court has considered the parties' arguments and is otherwise advised in the premises.

## I. Background[1]

The following facts are not in dispute. Plaintiff was employed as a "Road Ranger" by non-party Roy Jorgensen Associate, Inc. ("RJA"). In June 2011, RJA obtained commercial automobile insurance policy number ASJ-Z91-452222-031 ("Policy") from Defendant Wausua ("Wausau"). The Policy provided coverage to RJA in multiple states. When the Policy was initially issued, it included Florida uninsured/ underinsured motorist ("UM/UIM") coverage for $1 million. RJA paid the premium for $1 million in Florida UM/UIM coverage. Plaintiff, as an RJA's employee, was covered under the Policy.

While working for RJA, Plaintiff was involved in an automobile accident on October 23,

---

[1] Unless otherwise specified, the undisputed facts in this section are drawn from the parties' statements of material facts. (DE 35, 38). Plaintiff admitted paragraphs 1-11, 17-20, and 22-56 of Defendant's statement, and Defendant admitted paragraphs 2-6 of Plaintiff's statement. *Id.*

2011. Plaintiff made a claim seeking compensation under the UM/UIM coverage of the Policy. When the claim was rejected, this action ensued. The operative Amended Complaint bases jurisdiction on diversity of citizenship, 28 U.S.C. § 1332, and asserts claims of breach of contract (Count I), and promissory estoppel (Count II). Am. Compl. (DE 12).

Plaintiff does not deny that on August 2, 2011, RJA executed and returned to its insurance agent approximately 40 pages of documents intended to modify certain coverages under the Policy. Wausau received the documents on August 3, 2011. One of the documents is a Florida uninsured motorists coverage rejection form. (DE 38-3, p. 34 of 55). The dispute centers on this document and on its effect on Wausau's obligations.

Wausau contends that RJA properly disclaimed Florida UM/UIM coverage when the rejection form was executed. Wausau admits, however, that the endorsement removing UM/UIM coverage from the Policy was not issued until February, 2012, four months after Plaintiff's accident. Moreover, Wausau would typically refund the premium for the rejection of coverage when it audits the policy at the end of the policy year, which would have been in July, 2012 for RJA's Policy. However, Wausau did not refund the premiums then. Wausau only returned the premiums to RJA along with the statutory interest, for the total of $19,393.62, on August 14, 2013, approximately six months after this case had been initiated.

Plaintiff contends that the document rejecting Florida UM/UIM coverage was not signed. According to Plaintiff, this means that the rejection was not valid. Further, because at the time of the accident the Policy was not endorsed to exclude UM/ UIM coverage, and because the premiums were paid, Plaintiff seeks summary judgment. Wausau cross-moves for summary judgment arguing the RJA's rejection of coverage, which pre-dated the accident, was valid and conclusively establishes

2

Wausau's lack of obligation to Plaintiff.

Further, there is no dispute as to what treatment Plaintiff obtained. Immediately following the accident, Plaintiff went to Dr. Elliot Hinkes, an orthopaedic surgeon covered by the workers' compensation insurance available to Plaintiff. However, Plaintiff did not choose Dr. Hinkes as his surgeon. Plaintiff hired Adam Scher, a personal injury attorney, who referred Plaintiff to Dr. Kingsley Chin and Dr. Matthew Moore. Drs. Chin and Moore were not covered by workers' compensation. Plaintiff saw Dr. Chin for the first time on November 1, 2011.[2] Dr. Chin operated on Plaintiff's shoulder on December 7, 2011. Then, Dr. Moore performed surgery on Plaintiff's neck on December 22, 2011.

Plaintiff's position is that he went to Drs. Chin and Moore because his personal injury attorney had told him there was UM/UIM coverage on the basis of Wausau's representation. Therefore, Plaintiff asserts that Defendant Wausau should be estopped from denying his claim. Wausau argues that Adam Scher referred Plaintiff to the best doctors, without regard to what coverage was available. Thus, Wausau contends that Plaintiff cannot show that he relied on the representation of coverage to his detriment, and, therefore, Plaintiff cannot establish a claim of promissory estoppel.

## II. Discussion

**1. Cross-motions for summary judgment**

The Court may grant summary judgment "if the movant shows that there is no genuine

---

[2] At his deposition Plaintiff actually testified that he had not visited a doctor covered by workers' compensation insurance before seeing Dr. Chin. Arnold Dep., pp. 10-11 (DE 35-14). However, Defendant admits that this is contradicted by Plaintiff's medical records. The parties agree that Plaintiff first went to see a doctor covered by the workers' compensation, and then went to see Dr. Chin, who was not covered by worker's compensation, and who ultimately operated on Plaintiff. Pl.'s Resp. to Def.'s Stmnt. of Undisputed Facts, ¶¶ 33-48 (DE 43).

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The stringent burden of establishing the absence of a genuine issue of material fact lies with the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The Court should not grant summary judgment unless it is clear that a trial is unnecessary, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), and any doubts in this regard should be resolved against the moving party, *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record], which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case. *Id.* at 325.

After the movant has met its burden under Rule 56(a), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electronic Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) and (B).

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. *Anderson*, 477 U.S. at 257. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that

party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990). If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, then summary judgment may be granted." *Anderson*, 477 U.S. 242, 249–50 (internal citations omitted).

Because jurisdiction in this case is premised on diversity, the court must use the choice-of-law rules of the forum jurisdiction to determine the governing state law. *LaFarge Corp. v. Travelers Indem. Co.*, 118 F.3d 1511, 1515 (11th Cir. 1997). Florida, the forum state, generally applies the rule of *lex loci contractus* to contracts. *State Farm Mut. Auto. Ins. Co. v. Roach*, 945 So. 2d 1160, 1163 (Fla. 2006). With respect to insurance contracts it states that the law of the jurisdiction where the contract was executed governs. *Id.*; *LaFarge Corp.*, 118 F.3d at 1515; *Nat'l Fire & Marine Ins. Co. v. Adoreable Promotions, Inc.*, 451 F. Supp. 2d 1301, 1306 (M.D. Fla. 2006). However, when the policy is multi-state, but the covered vehicle is garaged in Florida, and the accident occurred in Florida, Florida law should govern the issue of uninsured motorist coverage. *See Wausau Underwriters Ins. Co. v. Baillie*, 281 F.Supp.2d 1307, 1313-15 (M.D. Fla. 2002) (citing *Amarnick v. Automobile Ins. Co. of Hartford, Connecticut*, 643 So.2d 1130 (Fla. 3rd DCA 1994); *Strochak v. Federal Ins. Co.*, 109 F.3d 717, 71920 (11th Cir.1997), answer to certified question in 138 F.3d 1338 (11th Cir.1998)).

Here, RJA and its insurance agent are located in Maryland, and Wausau is in Wisconsin. *See* Policy (DE 12-1). It is unknown where RJA's vehicle involved in the accident in question was garaged. However, the accident occurred in Florida. Am. Compl., ¶13 (DE 12). Moreover, the Policy covered RJA in multiple states, and the documents RJA forwarded through its insurance agent to Wausau contained forms relating to several states, including the form in question addressing UM/UIM coverage specifically for Florida. Thus, pursuant the analysis outlined in *Baillie* and the

cases cited therein, Florida law should govern whether UM/UIM coverage is available to Plaintiff in this case.

**a. Breach of contract**

The Court finds that neither Plaintiff nor Defendant is entitled to summary judgment. Section 627.727 of the Florida Statues governs uninsured and underinsured vehicle coverage, and states in relevant part:

> No motor vehicle liability insurance policy which provides bodily injury liability coverage shall be delivered or issued for delivery in this state with respect to any specifically insured or identified motor vehicle registered or principally garaged in this state unless uninsured motor vehicle coverage is provided therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom. However, the coverage required under this section is not applicable when, or to the extent that, an insured named in the policy makes a written rejection of the coverage on behalf of all insureds under the policy.

Fla. Stat. Ann. § 627.727(1).

Thus, the insurer is obligated to provide uninsured motor vehicle coverage unless the insured rejects this type of coverage. *Adams v. Aetna Cas. & Sur. Co.*, 574 So.2d 1142, 1146 (Fla. 1st DCA 1991). The statute was amended effective October 1, 1982 to require that the rejection of UM/ UIM coverage be in writing. *Id.* The rejection must also be knowing or informed. *Id.* (citing *Nationwide Prop. & Cas. Ins. Co. v. Marchesano*, 482 So. 2d 422, 424 (Fla. 2d DCA 1985) approved, 506 So. 2d 410 (Fla. 1987); *Kimbrell v. Great American Insurance Co.*, 420 So.2d 1086, 1089 (Fla.1982)). Whether the rejection was knowing or informed is usually a question of fact for the jury. *Id.*

The statute further states that:

> The rejection or selection of lower limits shall be made on a form approved by the office. The form shall fully advise the applicant of the nature of the coverage and

6

>    shall state that the coverage is equal to bodily injury liability limits unless lower limits are requested or the coverage is rejected. The heading of the form shall be in 12-point bold type and shall state: "You are electing not to purchase certain valuable coverage which protects you and your family or you are purchasing uninsured motorist limits less than your bodily injury liability limits when you sign this form. Please read carefully." If this form is signed by a named insured, it will be conclusively presumed that there was an informed, knowing rejection of coverage or election of lower limits on behalf of all insureds.

Fla. Stat. Ann. § 627.727(1).

Here, Wausau argues that the rejection form submitted to it as part of the package of documents dated August 2, 2011, but which remained unprocessed until February, 2012, conclusively establishes that Wausau is not obligated to provide UM/UIM coverage. Conversely, Plaintiff argues that the rejection form was not signed, and that because the Policy originally had included UM/UIM coverage, and because premiums had been paid and not refunded long after this law suit was commenced, Wausau must cover Plaintiff's losses. The Court finds that a genuine issue of material fact remains.

The form in question was indeed included among numerous other documents following the cover letter dated August 2, 2011. (DE 38-3). The form is entitled "Florida Uninsured Motorists Coverage Selection/ Rejection." (DE 38-3, p. 34 of 55). The document invites the insured to either select the alternative Uninsured Motorists Coverage and to fill in the limit, or to "reject Uninsured Motorists Coverage entirely." The selection is offered to be made by placing the initials next to the option chosen. The cover letter as well as the other forms were signed by Douglas W. Selby. (DE 38-3). The initials placed next to the option rejecting coverage on the form in question are hard to read, but seem to be "DWS." There is no signature line on the first page of the form, and there is no signature.

The second page of the form is entitled "Election of Non-Stacked Coverage (Do not complete if you have rejected Uninsured Motorists Coverage)." This page explains the limited non-stacked type of uninsured motorists coverage, and calls for the selection of non-stacked coverage to be made by initialing this option. Additionally, there is a designated signature line on this page, but there is no signature. Below the signature block, a handwritten note stating "DO NOT COMPLETE" is placed on what appears to be a sticky note affixed to the page.

The forms addressing uninsured motorist coverage for other states were also included in the packet following the August 2, 2011 cover letter. (DE 38-3). For example, the Maryland, North Carolina, and Michigan forms are similar to the Florida one. *Id.* While the Maryland, North Carolina, and Michigan forms each contain only one page, these forms were both initialed to indicate the option selected, and signed by Douglas Selby. *Id.*

Douglas Selby, the President of RJA, submitted an affidavit stating that "RJA made a knowing and informed business decision to reject Florida UM/UIM coverage for the policy period of July 1, 2011 to July 1, 2012." (DE 38-3). Mr. Selby also states that he initialed the first page of the Florida Uninsured Motorists Coverage form to indicate rejection, and that he did not believe that signing the second page of the form was necessary.[3] *Id.*

The form in question contains the statutorily required warning. Under Florida law, if the form were "signed," the Court would have "conclusively presumed that there was an informed, knowing rejection of coverage or election of lower limits on behalf of all insureds." *See* Fla. Stat. Ann. § 627.727(1). However, the form in question is only initialed. Unlike the uninsured motorist

---

[3] Mr. Selby further contends that the endorsement reflecting the absence of UM/UIM coverage in five states was received by RJA on February 29, 2013, and that the premiums were refunded in August, 2012. However, the attached check for the returned premiums is dated August 14, 2013. Ex. D (DE 38-3).

coverage forms for other states, it is not signed. Further, Mr. Selby's affidavit states that RJA made a business decision to reject uninsured motorists coverage. Nevertheless, the premium refund of approximately $19,000 due as a result of this rejection was not returned to RJA for over two years. The lack of a demand for a $19,000 refund and the lateness of its payment could be construed by a trier of fact as inconsistent with a business decision to reject UM/UIM coverage. Lastly, the form in question is not dated, and was not processed until four months after Plaintiff's accident. This also raises a question of fact as to whether RJA made an informed or knowing rejection of Florida UM/UIM coverage.

Plaintiff argues that lack of signature on the Florida form in question invalidates the rejection, or conclusively establishes that no rejection took place at all. However, the form in question may be interpreted by the jury as a knowing or informed rejection of coverage that pre-dates Plaintiff's accident.

Plaintiff further contends that the endorsement excluding UM/UIM coverage was issued after the accident, which makes it a nullity. However, the cases that Plaintiff cites only state that the insured must select coverage before the loss occurs. *See Word v. Illinois Union Ins. Co.*, 807-CV-1513-T-33TGW, 2009 WL 152866 (M.D. Fla. 2009); *Sec. Ins. Co. of Hartford v. Baad*, 657 So. 2d 10 (Fla. 3d DCA 1995); *Quirk v. Anthony*, 563 So. 2d 710, 715 n. 4 (Fla. 2d DCA 1990) approved and remanded sub nom. *Travelers Ins. Co. v. Quirk*, 583 So. 2d 1026 (Fla. 1991); *Chmieloski v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 563 So. 2d 164, 166 (Fla. 2d DCA 1990) (stating that only evidence of an actual oral rejection could satisfy the insurer's burden, evidence that the insured hypothetically would have rejected coverage if it was offered is insufficient). These cases do not require the insured to reject coverage and the insurer to issue the endorsement excluding coverage

9

prior to the occurrence of the loss. *See id.*

The facts that the rejection form was neither signed nor dated, that Wausau did not endorse the Policy until after the accident, and did not refund the premiums until after this litigation ensued create a genuine issue of material fact as to whether a knowing or informed rejection of uninsured motorists coverage occurred, and, if it did, as to when the rejection took place. A reasonable jury may find in favor of either Plaintiff or Defendant on these facts. Thus, summary judgment is not appropriate for either side.

**b. Promissory estoppel**

"To state a cause of action for promissory estoppel, a plaintiff must establish the following three elements: (1) a representation as to a material fact that is contrary to a later-asserted position; (2) a reasonable reliance on that representation; and (3) a change in position detrimental to the party claiming estoppel caused by the representation and reliance thereon." *FCCI Ins. Co. v. Cayce's Excavation, Inc.*, 901 So. 2d 248, 251 (Fla. 2d DCA 2005) (citing *Almerico v. RLI Ins. Co.*, 716 So.2d 774 (Fla.1998)).

Defendant Wausau stresses that Plaintiff cannot establish that Plaintiff changed his position to his detriment because of Wausau's representation that there was coverage. Plaintiff asserts, however, that he went to the physicians who were not covered by the workers' compensation insurance because he was told there was UM/UIM coverage. The Court finds that a genuine issue of material fact exists.

Katherine Delmonte, Adam Scher's paralegal, testified at her deposition that on November 11, 2011 she spoke to Jay Reiman at Wausau, who confirmed that $1 million in UM coverage would be available to Plaintiff. Delmonte Dep., pp. 12-14 (DE 35-3). Plaintiff admits that he went to see

Dr. Chin, who was not covered by the workers' compensation insurance, for the first time on November 1, 2011, or before Katherine Delmonte spoke to Jay Reiman. Pl.'s Resp. to Def.'s Stmnt. of Undisputed Facts, ¶ 46 (DE 43). Wausau also points out that there is no evidence that Adam Scher requested a copy of the Policy before referring Plaintiff to the medical providers. Further, Adam Scher testified that he sent Plaintiff to Dr. Chin for two reasons. Scher Dep., pp. 7-9 (DE 35-4). First, Dr. Chin is one of the best doctors, and Adam Scher was not concerned about coverage because Dr. Chin could have been paid through a letter of protection or from a case settlement. *Id.* Second, because Wausau assured Adam Scher's paralegal that there was coverage. *Id.*

Nevertheless, Plaintiff was adamant at his deposition that he went to see Dr. Chin after he had been assured by Adam Scher that there was $1 million UM coverage. Arnold Dep., p. 10 (DE 35-14). Also, the undisputed fact remains that the Policy was not endorsed to exclude UM/UIM coverage until after Plaintiff had his surgeries.

Thus, there is a genuine issue of material fact with respect to the timing of Wausau's confirmation of coverage to Plaintiff or his attorney; and with respect to whether Plaintiff went to the physicians not covered by the workers' compensation insurance because Plaintiff was assured that there would be UM/UIM coverage, or without regard for any particular method of payment for the medical treatment. Again, a reasonable jury could find for either Plaintiff or Defendant on these facts.

Because summary judgement is not appropriate, the Court will not address at this time whether Plaintiff may recover attorney's fees.

**2. Defendant's motion to amend its answer**

Lastly, Defendant seeks leave to amend its Answer to Plaintiff's Amended Complaint. (DE

11

20).  Defendant's Motion for Leave to Amend was filed after the deadline to amend the pleadings set by the Court.  In the Answer (DE 14), Defendant admitted that the policy attached to the Amended Complaint was the Policy in effect from July , 2011 through July 1, 2012.  Defendant now seeks to amend its Answer to indicate that the Policy attached to the Amended Complaint was not complete, and to attach the version of the Policy complete with the endorsement excluding uninsured motorists coverage.  Plaintiff opposes the amendment as futile and prejudicial, and because no good cause for the lateness was shown.

> The Eleventh Circuit Court of Appeals has stated:
>
> District courts are required to "enter a scheduling order that limits the time to . . . join other parties and to amend the pleadings." Fed. R. Civ. P. 16(b). Such orders "control the subsequent course of the action unless modified by a subsequent order," Fed. R. Civ. P. 16(e), and may be modified only "upon a showing of good cause." Fed. R. Civ. P. 16(b). This good cause standard precludes modification unless the schedule cannot "be met despite the diligence of the party seeking the extension." Fed. R. Civ. P. 16 advisory committee's note; *see also Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992) ("If [a] party was not diligent, the [good cause] inquiry should end.").

*Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1418 (11th Cir. 1998); *see also Green Island Holdings, LLC v. British Am. Isle of Venice (BVI), Ltd.*, 521 F. App'x 798, 800 (11th Cir. 2013) (citing *Sosa* approvingly).  Thus, parties who move to amend after the scheduling order's deadline must "demonstrate good cause under Rule 16(b) before a court will consider whether amendment is proper under Rule 15(a)."  *Romero v. Drummond Co., Inc.*, 552 F.3d 1303, 1319 (11th Cir. 2008).

Here, pursuant to the leave of Court, Plaintiff's Amended Complaint was filed after the deadline to amend the pleadings had passed.  Thus, it was impossible for Defendant to comply with the deadline in seeking leave to amend its Answer.

Under Rule 15(a), leave to amend should be granted liberally "when justice so requires." *See*

Fed. R. Civ. P. 15(a)(2).  Here, granting leave to amend would not be futile because Defendant is not foreclosed from arguing that coverage was rejected prior to Plaintiff's accident, as discussed above.  Further, amending the Answer will not cause Plaintiff any prejudice because the original Answer (DE 14) already included the affirmative defense that prior to the accident RJA and Wausau had agreed to exclude UM/UIM coverage.  Thus, Plaintiff has been on notice of this defense since the very first stage of this case.  Accordingly, Defendant will have leave to amend its Answer to Plaintiff's Amended Complaint.

### III. Conclusion

Accordingly, Plaintiff's and Defendant's Motions for Summary Judgment (DE 35 and 38) are  **DENIED**, and Defendant's Motion for Leave to Amend (DE 20) is **GRANTED**.  Defendant shall separately file its Amended Answer within 3 days of this Order.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 24th day of February, 2014.

_____
KENNETH A.  MARRA
United States District Judge